IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TODD SHELTON,** | Case No. 3:14-cv-01561-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,**<br>Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, Schneider Kerr & Gibney Law Offices, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Herbert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; L. Jamala Edwards, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Todd Shelton seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Disability

Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by

substantial evidence, the decision is REVERSED and this case REMANDED for immediate

calculation and payment of benefits.

OPINION AND ORDER – 1

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## BACKGROUND

### A.  Plaintiff's Application

Mr. Shelton filed an application for DIB on April 15, 2010, alleging disability as of May 6, 2007. AR 153, 257. The alleged onset date was subsequently changed to February 23, 2010.

AR 45-46. Born in January 1965, Mr. Saenz was 45 years old on the alleged disability onset date and 47 at the time of the hearing. AR 63, 257. He speaks English and graduated from high school. AR 542. He alleges disability due to: depression, anxiety, cognitive disorder, traits of a personality disorder, gastroesophageal reflux disease, degenerative disc disease, psychogenic seizures, and a history of knee surgery. AR 139. The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 171, 186. After an administrative hearing held on January 2, 2013, the ALJ found Mr. Shelton not disabled in a decision dated January 25, 2013. AR 23-34. On August 5, 2014, the Appeals Council denied Mr. Shelton's subsequent request for review. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner, and Mr. Shelton sought review in this Court.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

OPINION AND ORDER – 4

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also* *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis. Tr. 26-34. At step one, the ALJ found that Mr. Shelton had not engaged in substantial gainful activity since February 23, 2010, the alleged onset date. AR 26. At step two, the ALJ concluded that Mr. Shelton had the following severe impairments: gastroesophageal reflux disease, degenerative disc disease of the lumbar spine, depression, anxiety, and cognitive disorder. *Id.* At step three, the ALJ determined that Mr. Shelton did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 27.

The ALJ next assessed Mr. Shelton's RFC and found that he could perform light work, except that he: (1) should avoid unprotected heights and hazardous machinery; (2) is limited to occasional climbing, stooping, crouching, kneeling, and crawling; (3) is limited to entry-level work in a routine environment; (4) should have daily goals for his work; (5) is precluded from

assembly-line work; and (6) should have no more than occasional interaction with the public and

co-workers. AR 28. At step four, the ALJ found that Mr. Shelton had no past relevant work. AR

33. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded Mr.

Shelton could perform jobs that exist in significant numbers in the national economy, including

laundry folder and mail clerk. AR 33-34. Accordingly, the ALJ found Mr. Shelton not disabled.

AR 34.

## DISCUSSION

Mr. Shelton argues the ALJ erred by: (A) failing properly to consider Listing § 12.05C;

(B) improperly discounting Mr. Shelton's testimony; (C) improperly discounting medical

opinion evidence; (D) improperly discounting Mr. Shelton's lay witness testimony; and

(E) failing at step five to identify appropriate jobs in the national economy.

**A. Listing § 12.05C**

Mr. Shelton contends, and defendant concedes, that the ALJ failed to address Listing

§ 12.05C at step three of the sequential evaluation process. Def.'s Br. 5; AR 27; 20 C.F.R. Part

404 Subpt. P, App. 1 § 12.05. Listing § 12.05 applies to claimants with "significantly subaverage

general intellectual functioning with deficits in adaptive functioning initially manifested during

the development period [before age 22] . . . ." 20 C.F.R. Part 404 Subpt. P, App. 1 § 12.05. In

addition to the first prong -- the question of adaptive functioning deficits before age 22 -- Mr.

Shelton alleges he meets the remaining two prongs under subpart C: "[a] valid verbal,

performance, or full scale IQ ["FSIQ"] of 60 through 70 and a physical or other mental

impairment imposing an additional and significant work-related limitation of function[.]" *Id.*

at C.

Defendant argues Mr. Shelton has not established adaptive functioning deficits prior to age 22, explaining, "there are no school or medical records to establish" whether he was in special education, and his graduation from high school shows higher functioning than that alleged by Mr. Shelton. Def.'s Br. 5. The first prong, however, may be satisfied by using "circumstantial evidence to demonstrate adaptive functioning deficits, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing[,] or math, and low skilled work history." *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1011 (D.Or. March 23, 2011) (citing *Campbell v. Astrue*, *available at* 2011 WL 444783, at *17 (E.D.Cal. Feb. 8, 2011); *see also Nicholson v. Colvin*, --- F.Supp.3d --- (D.Or. May 5, 2015), *available at* 2015 WL 2131210, at *5.

Independent review of the record reveals sufficient evidence of functional deficits before Mr. Shelton's 22nd birthday. Mr. Shelton provided consistent testimony during the hearing, in his 2010 disability report, and in a 2011 neuropsychological evaluation that he attended special education classes from grade school through high school, and repeated kindergarten, first grade, and twelfth grade. AR 99, 292, 542. Mr. Shelton reported struggling in all subjects despite attending remedial-level classes. AR 99, 542. Psychologist Thomas Smurthwaite, Ph.D. noted "long-term intellectual deficits" and "significant cognitive limitations." AR 547, 548. Mr. Shelton's wife, Julie Cordill, explained that it takes him an inordinately long time to complete moderately complex tasks such as assembling furniture, which she noted has been occurring for 20 years. AR 273. Ms. Cordill further noted he cannot spell or write legibly. *Id.* Neither the ALJ nor defendant dispute these factual allegations. Accordingly, viewing the record as a whole, there

is adequate circumstantial evidence to establish adaptive deficits before age 22, which meets the first prong.[1]

As Mr. Shelton notes, the ALJ presumably failed to address Listing § 12.05C because he erroneously reported Mr. Shelton's FSIQ was 74. AR 31, 545. The particular record cited by the ALJ states, "[o]n the WAIS-IV, the patient obtained a full-scale IQ of 70, which is 2nd percentile." AR 545. Although defendant notes Mr. Shelton scored 74 on verbal comprehension, 75 on reasoning, and 83 on working memory, that is irrelevant because § 12.05C requires only that plaintiff establish a FSIQ of 60-70. Section 12.05C; Def.'s Br. 5; *see* AR 545. Courts in the Ninth Circuit have interpreted the regulations to "prefer" the lowest score not just from a single test, but also from among multiple IQ tests. *See Borders v. Colvin*, *available at* 2014 WL 6901177, *5 (D.Or. December 3, 2014) (citing *Ray v. Chater*, 934 F.Supp. 347, 350 (N.D.Cal. July 23, 1996)). The Ninth Circuit itself has adhered to the rule even when the plaintiff's most recent IQ score did not qualify under § 12.05C. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987); *see also Lewis v. Astrue*, *available at* 2011 WL 1085254, *3 (D.Or. Feb. 15, 2011). Accordingly, Mr. Shelton meets the second prong.[2]

The third prong requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." § 12.05C. Mr. Shelton argues "[t]he ALJ himself found that Mr. Shelton's degenerative disc disease is a severe impairment that limits [him] to light work." Pl.'s Br. 5; AR 26, 28. Mr. Shelton further notes the ALJ found at step two

---

[1] To the extent the Commissioner disputes these factual findings based on the ALJ's credibility determinations as to Mr. Shelton, Ms. Cordill, and Dr. Smurthwaite, such arguments are unavailing based on the ALJ's credibility assessment errors. *See* §§ B, C, and D, *infra*.

[2] The Court acknowledges defendant's arguments regarding Dr. Smurthwaite's "concern" over the scores as well as the possible effect of prescribed narcotics and benzodiazepines. *See* Def.'s Br. 5; AR 548. Despite that concern, however, Dr. Smurthwaite did not invalidate the results. As such, the Court accepts the scores at face value.

that Mr. Shelton's depression and anxiety are severe impairments. *Id.* Defendant does not offer a

rebuttal to Mr. Shelton's arguments regarding the third prong inquiry. Further, the Court agrees

that the other severe impairments found by the ALJ meet the requirements of the listing. Thus,

because all three prongs are met, Mr. Shelton should have been deemed to meet § 12.05C.

Remand, therefore, is necessary.

## B. Plaintiff's Credibility

There is a two-step process for evaluating the credibility of a claimant's testimony about

the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586,

591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir.

2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so,

the claimant "need not show that her impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably have caused

some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Ortez v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, daily activities, work record, and observations of physicians and third parties regarding claimant's alleged functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities, the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom "is not substantiated affirmatively by the objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has stated that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting claimant's testimony are upheld. *Batson*, 359 F.3d at 1197. Here, the ALJ found that Mr. Shelton's "medically determinable impairments caused symptoms resulting in some limitations on work activity." AR 29. The ALJ concluded, however, that "the objective evidence does not establish that his impairments

preclude him from engaging in all basic work activity as he alleged." *Id.* Mr. Shelton contends

the ALJ employed the incorrect legal standard in discrediting his testimony.

Mr. Shelton argues that the standard for establishing disability under the Act is not

whether a claimant's impairments preclude "all basic work activity." The Court agrees. The

proper standard is articulated in the definition of RFC:

> RFC is the individual's maximum remaining ability to perform
> sustained work on a regular and continuing basis; i.e., *8 hours a*
> *day, for 5 days a week, or an equivalent work schedule*. It is not
> the least an individual can do, but the most, based on all of the
> information in the case record.

SSR 96-9p, *available at* 1996 WL 374185, at *2 (emphasis added); *see also* SSR 96-8p,

*available at* 1996 WL 374184, at *2; 20 C.F.R. § 404.1512(a). Thus, the disability standard

contemplates both the exertion level of the job and the time spent performing job activities. As

Mr. Shelton accurately observes, even if an individual could perform very heavy work for four

hours per day, five days per week, but less than sedentary work for the remainder of the week, he

could be deemed disabled under the Act despite presumably being capable of engaging in a wide

range of work activity. Pl.'s Br. 13. Although such a scenario may not be particularly plausible,

it nonetheless delineates the proper legal standard. Thus, even if Mr. Shelton's impairments do

not preclude him from "all basic work activity," the possibility remains he is unable to perform

"basic work activity" on a sustained, full-time basis.[3] The ALJ's failure to use the correct legal

standard is harmful error.

---

[3] The Court recognizes that an ALJ may legitimately discount a claimant's testimony that
he is "unable to perform *any* work" when that testimony conflicts with other substantial evidence
because an ALJ may use "ordinary techniques of credibility evaluation," including inconsistent
testimony. *Smolen*, 80 F.3d at 1284; *see Reddick*, 157 F.3d at 723 n.1 (only if plaintiff's level of
activity is inconsistent with plaintiff's alleged limitations would such activities bear on
credibility); *see also Frank v. Colvin*, *available at* 2015 WL 6150852 at *4 (D. Or. October 19,
2015) ("while plaintiff's activities reflect some functionality, the ALJ failed to identify

The ALJ further discounted Mr. Shelton's credibility because his alleged symptoms were not consistent with the medical evidence. AR 29. Regarding Mr. Shelton's alleged back impairments, the ALJ noted that despite a history of degenerative disc disease of the lumbar spine, plaintiff's 2006 lumbar CT scan "showed no abnormalities to explain [his] complaints of right-sided lumbar pain radiating into his right leg and foot." *Id.* Plaintiff argues the ALJ failed to address updated imaging studies, but the September 2012 CT scan plaintiff cites involves the cervical spine, so it is not clear how or why the cervical spine results bears on the ALJ's findings regarding the lumbar spine. It is improper, however, for an ALJ to discredit a plaintiff's pain testimony based on lack of objective medical findings alone. *Robbins*, 466 F.3d at 883. Moreover, the ALJ found that "objective medical evidence in the record supports the conclusion that the claimant continues to have some back pain," which would not preclude him from returning to light work. AR 29. Although it may be true that Mr. Shelton's back pain *alone* may not preclude him from light work, the proper standard is whether Mr. Shelton's impairments, in combination, preclude light work. As such, the ALJ's findings do not meet the clear-and-convincing threshold required to discount Mr. Shelton's credibility. *Lingenfelter*, 503 F.3d at 1036.

Mr. Shelton's veracity was also discounted based on his activities of daily living ("ADLs"). The ALJ found Mr. Shelton was "independent with his personal care and hygiene, prepares simple meals, does yard work . . . drives a car . . . shops for food . . . collect[s] and recycle[s] cans . . . rides a bus . . . and rides a bicycle." AR 32. Testimony regarding ADLs may

---

inconsistencies between plaintiff's activities and his alleged level of impairment . . . ."). Here, the Court is unable to locate any evidence that Mr. Shelton stated he was precluded from performing all work or that he was unable to perform "basic work activity," as the ALJ suggested. Further, defendant does not direct the Court to any such evidence. Accordingly, the ALJ's finding is not supported by prior inconsistent testimony.

impugn a claimant's credibility in several ways: first, because the ADLs contradict other testimony; or second, by showing that a claimant is not disabled because the ADLs meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639.

Here, the ALJ invoked the latter method, stating, "[Mr. Shelton's] [ADLs] also support the conclusion that [he] is able to return to work at the [RFC] outlined above." AR 32. The fact, however, that plaintiff is able to perform some work, complete some household chores, and independently attend to personal hygiene does not necessarily translate to the ability to perform full-time work as defined by the Act. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). As discussed above, Mr. Shelton concedes that he is able to perform some work activities. Pl.'s Br. 16. As the Ninth Circuit has repeatedly held, a claimant should not be penalized for attempting to lead a normal life in the face of his limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Defendant's argument that Mr. Shelton's ADLs evidence "does not clearly require a finding of disability" fails because it misstates the proper legal standard. Def.'s Br. 6. The ALJ did not adequately explain inconsistencies between Mr. Shelton's testimony and his ADLs and did not provide specific examples of how Mr. Shelton's ADLs transfer to a competitive work environment. For all of these reasons, the ALJ's credibility assessment cannot be upheld.

## C. Medical Opinion Evidence

Mr. Shelton argues the ALJ improperly rejected the medical opinions of his treating, examining, and reviewing physicians. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle*, 533 F.3d at 1164. The

Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

1. *Stephanie Schaefer, Psy.D.*

The ALJ concluded that Mr. Shelton's psychologist, Stephanie Schaefer, Psy.D., "accepted the claimant's subjective complaints . . . and appear reflective of a position of

OPINION AND ORDER – 14

'advocate' for the patient." AR 31. Dr. Schaefer noted that she had seen Mr. Shelton four times and completed a questionnaire on August 7, 2012. AR 536. Dr. Schaefer diagnosed major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, episodic alcohol abuse, opioid dependence in remission, and rule out cognitive disorder. AR 536. She indicated Mr. Shelton has a marked limitation in concentration, persistence, and pace and a moderate limitation in ADLs. AR 537. She also indicated Mr. Shelton would likely miss 16 hours per month, even in a sedentary job. AR 540. Dr. Schaefer's opinion was countersigned by Byron N. Fujita, Ph.D. *Id.* The Commissioner does not defend the ALJ's according little weight to Dr. Schaefer's medical opinion.

The ALJ found Dr. Schaefer's opinions "were not supported by the treatment record." AR 30. Specifically, the ALJ noted Dr. Schaefer's explanations regarding marked limitations in concentration, persistence, and pace and in social functioning "d[id] not support the conclusion that the claimant has marked impairments in those areas." *Id.* The doctor, however, explained in her assessment that Mr. Shelton is easily distracted and "gets off task" and that he "overall has difficulty trusting others and feels anxious when around other people." AR 537. Dr. Schaefer further explained that Mr. Shelton's moderate impairment in performing ADL's was based on his reports that he preferred structure and to avoid other people. *Id.* The ALJ rejected Dr. Schaefer's reasoning, stating that ADLs were "unrelated" to Mr. Shelton's desire to avoid people. AR 30-31. As Mr. Shelton argues, however, many ADLs involve the presence of others, such as shopping. Pl.'s Br. 8. Defendant does not dispute Mr. Shelton's contention. Further, while the ALJ indicated Mr. Shelton's own descriptions of his daily activities "contradicts" Dr. Schaefer's opinion, independent review of the evidence cited by the ALJ reflects minimal public contact,

OPINION AND ORDER – 15

which does not contradict either Dr. Schaefer or Mr. Shelton's assertions. AR 31, 312-15. Accordingly, the ALJ's rationales are not clear and convincing.

Moreover, viewing the record as a whole, Dr. Schaefer's opinions are generally consistent with the opinions of the other examining mental health physicians of record. *See, e.g.*, AR 548 (unable to maintain pace, significant reduction in basic ADLs), AR 558 (would require an environment where he could work at his own pace, moderate limitation in ability to carry our complex instructions, interact appropriately with supervisors). Similarly, the reviewing agency mental health physicians opined that Mr. Shelton was "moderately limited" in maintaining attention and concentration for extended periods; they also indicated that in terms of concentration and persistence, he was only able to "carry out simple tasks which do not require sustained concentration or persistence." AR 148, 165. Further, Mr. Shelton's treating non-mental health physicians and therapists consistently noted treatment for depression and anxiety. *See, e.g.*, AR 389-93, 402-06; 417-18, 450-51; 467; 472-73, 492-98; 511, 514, 517-21, 527-29. Based on the foregoing, the ALJ failed to provide legally sufficient reasons to discredit Dr. Schaefer's opinions.

2. *Thomas Smurthwaite, Ph.D.*

Mr. Shelton underwent a neuropsychological evaluation by Thomas Smurthwaite, Ph.D. in April 2011. Dr. Smurthwaite conducted an interview and administered a battery of psychological tests. AR 541. The ALJ indicated that he accorded Dr. Smurthwaite's opinion "some weight," finding the assessment supported the conclusion Mr. Shelton has a cognitive disorder, but noting that the doctor's opinion "lacked specificity" about how Mr. Shelton's mental impairments affected his ability to function at work and asserting that ultimate decisions regarding disability are reserved to the Commissioner. AR 31. Dr. Smurthwaite concluded:

OPINION AND ORDER – 16

> Given Mr. Shelton's significant cognitive limitations, in combination with his reduced functioning in key adaptive areas, it is highly doubtful that he could return to work. He has either mild mental retardation or borderline intellectual functioning, a significant reduction in his ability to carry out even basic [ADLs] such as bathing and brushing his teeth, and an attentional impairment that makes it extremely difficult for him to lean in a normal work or home environment . . . it is virtually certain that the patient would be unable to maintain the pace of a work environment . . . .

AR 548.

As discussed in Section A of this Opinion and Order, Dr. Smurthwaite determined Mr. Shelton has a FSIQ of 70, which places him in the second percentile. AR 547. Also, despite the ALJ's contrary finding, independent review of Dr. Smurthwaite's eight-page opinion reflects ample specificity regarding the potential effects of Mr. Shelton's mental impairments. Although the ALJ accurately notes that ultimate disability opinions are reserved to the Commissioner, physicians may also provide such opinions. *See* 20 C.F.R. § 404.1527(e)(1); *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2008). Indeed, an ALJ may not reject the uncontroverted opinion of a physician on disability absent clear and convincing reasons, nor controverted opinions of physicians absent specific and legitimate reasons. *Reddick*, 157 F.3d at 725. Thus, Dr. Smurthwaite's opinion that Mr. Shelton would be unable to return to work is not a valid reason to accord his opinion diminished weight. The ALJ failed to provide legally sufficient reasons to discredit Dr. Smurthwaite's opinions.

3.  *Shawn Johnston, Ph.D.*

Although the ALJ purported to accord the opinion of Shawn Johnston, Ph.D. "significant weight," Mr. Shelton contends the RFC did not incorporate all of the impairments noted by Dr. Johnston. Specifically, Mr. Shelton argues the RFC did not include his need to work in a sheltered setting and at his own pace and his moderate impairment in his ability to interact

OPINION AND ORDER – 17

appropriately with supervisors. Pl.'s Br. 11; AR 31-32, 558, 560. Dr. Johnston diagnosed mixed anxiety-depressive disorder; mild cognitive disorder NOS on a provisional basis; R/O borderline intellectual functioning; passive-aggressive, dependent and avoidant personality traits; and a GAF (global assessment functioning) score of 50. AR 557. The ALJ found Dr. Johnston's opinion supported Mr. Shelton's need for "daily goals" and only "occasional interaction with the public and co-workers." AR 31-32.

Although Dr. Johnston indicated that Mr. Shelton was somewhat limited in his interactions with the public, Dr. Johnston opined that Mr. Shelton was most limited in supervisor interaction, presumably based on his reported work history, which was not included in the RFC. AR 28, 560. Contrary to the ALJ's statement, Dr. Johnston did not find Mr. Shelton was limited in co-worker interaction. *Id.* Further, despite the ALJ stating that Dr. Johnston's opinion was given significant weight, the ALJ failed to include Dr. Johnston's opinion that Mr. Shelton needed to work at his own pace and in a sheltered work setting. AR 558. The Commissioner offers no response. Thus, by failing to include Dr. Johnston's credited opinions in the RFC, the ALJ erred. *See* SSR 85-15 *available at* 1985 WL 56857, at *6 ("Any impairment-related limitations created by an individual's response to the demands of work . . . must be reflected in the RFC assessment.").

4. *Bill Hennings, Ph.D., and Dordell Kennemer, Psy.D.*

Examining agency psychologists Bill Hennings, Ph.D., and Dordell Kennemer, Psy.D., reviewed the record and provided opinions. AR 147-49, 164-65. Both doctors opined that Mr. Shelton is "capable of organizing and directing his behavior to carry out simple routine tasks which do not require sustained concentration or persistence. AR 148, 165. As Mr. Shelton argues, the ALJ did not mention the opinions of Drs. Hennings and Kennemer in his decision or

OPINION AND ORDER – 18

account for them in the RFC formulation. Although an ALJ is not required to comment on every piece of evidence, the ALJ failed to recognize that these opinions supported the findings of Drs. Schaefer, Smurthwaite, and Johnston regarding Mr. Shelton's concentration, persistence, and pace. The ALJ erred by omitting an explanation of why the significant probative evidence presented by Drs. Hennings and Kennemer was rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Defendant does not contest Mr. Shelton's argument.

In sum, the ALJ failed to provide specific, clear, and convincing reasons for rejecting the medical opinions of Drs. Schaefer, Smurthwaite, Johnston, Hennings, and Kennemer. Accordingly, remand is required.

**D. Lay Witness Testimony**

Mr. Shelton argues the ALJ improperly rejected the lay testimony of his wife, Julie Cordill. Lay testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted).  Ms. Cordill completed a questionnaire and submitted a letter describing Mr. Shelton's limitations. AR 271-73, 320-27. The ALJ ruled that Ms. Cordill's statements contradicted Mr. Shelton's self-report and that her close familial relationship impugns the credibility of her statements. AR 32.

Mr. Shelton indicated through a "check-box" form that he is able to pay bills and use a checkbook, which was contradicted by Ms. Cordill to the extent she stated he has attempted to assist with family banking but he "doesn't understand how to budget . . . [or] the banking system." *Compare* AR 316 *with* AR 323. Statements that are inconsistent with a claimant's own

allegations provide a germane reason to discount a lay witness's testimony. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Ms. Cordill, however, indicated that Mr. Shelton has "tried many times" to assist with family budgeting and "money orders he can do." AR 323. Further, contrary to the ALJ's findings, Ms. Cordill's assessment was *not* inconsistent regarding Mr. Shelton's ability to count change, handle a savings account, perform limited yard work, attend appointments, and prepare simple meals. AR 32, 314-16, 321-23. Thus, the inconsistencies identified by the ALJ were either weak or non-existent. Thus, they cannot be considered adequately germane to her. Rather, Ms. Cordill's observations of her husband's limitations are consistent with the record as a whole.

To the extent the ALJ invoked Ms. Cordill's marital relationship to discredit her testimony, the ALJ erred. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."  *Smolen*, 80 F.3d at 1288-89. The Ninth Circuit has explained that "testimony from lay witnesses who see the [plaintiff] everyday [sic] is of particular value . . . ."  *Id.* The Ninth Circuit also held that an abstract financial interest in a plaintiff's receipt of benefits is not in itself sufficient to reject lay witness testimony. *See Valentine v. Comm's Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that an ALJ may not rely solely on "characteristics common to all spouses" to discount a spouse's testimony). Nonetheless, a lay witness's close relationship to a plaintiff and possible pecuniary interest in a particular outcome, when coupled with inconsistent medical evidence, have been found to be germane reasons. *See, e.g.*, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  Because the Court's independent review of the third-party testimony does not establish inconsistency with the medical record, the mere possibility that Ms. Cordill's testimony was tainted by her familial economic interest is not

germane. Further, the Commissioner does not dispute Mr. Shelton's assignment of error regarding lay witness testimony.

**E. Step Five Findings**

Mr. Shelton argues that the ALJ erred at step five by finding he was able to perform the occupations of laundry folder and mail clerk. AR 34. Mr. Shelton contends the hypothetical questions presented to the VE that resulted in identifying those occupations were incomplete because they were predicated on the ALJ's erroneous RFC. "If the hypothetical does not reflect all of the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)).

Mr. Shelton contends that when presented with hypotheticals appropriately including limitations similar to those provided by the improperly rejected sources, the VE testified that such limitations would preclude competitive employment. AR 59-60; Pl.'s Br. 18-19. The Court agrees with Mr. Shelton. Further, the Comissioner does not dispute that the ALJ's step five job findings were erroneous.

**F. Remand for Payment of Benefits**

Although the Commissioner concedes that errors in the decision warrant remand, the Commissioner argues that additional proceedings, rather than immediate calculation and payment of benefits, is appropriate. The Court has discretion to reverse the Commissioner's final decision for further proceedings or to award benefits. 42 U.S.C. § 405(g); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted). Courts are empowered to affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a

rehearing." 42 U.S.C. § 405(g). Remand for the calculation of benefits is one possible remedy. The Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the record has been fully developed and further proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.

Defendant argues that there are unresolved issues that require further proceedings. Defendant contends first that the ALJ did not consider whether Mr. Shelton met Listing § 12.05C. Def.'s Br. 5. As discussed in Part A above, however, Mr. Shelton provided ample evidence establishing the requisites of Listing § 12.05C. Defendant also argues that the record does not clearly require a finding of disability. *Id.* at 7. Specifically, defendant states the record does not show whether Mr. Shelton's impairments limit him from "all work" because his ADLs, past relevant work, and the medical evidence are inconsistent with "total disability." *Id.* at 7-8. The test under the Act, however, is not whether a plaintiff has "total disability," but whether he can perform in a competitive work environment on a full-time basis. SSR 96-9p at *2; SSR 96-8p at *2. Further, regardless of Mr. Shelton's functional abilities in the workplace, he is presumed disabled under the Act by virtue of fulfilling the requirements of Listing § 12.05C. Additional development of the record will not change the fact that Mr. Shelton meets this listing.

Moreover, even if Mr. Shelton did not meet Listing § 12.05C, it is likely he would still be found disabled given the nature and extent of the improperly rejected evidence in this case, including the medical opinions of treating and examining physicians Drs. Schaefer, Smurthwaite, and Johnston, reviewing doctors Hennings and Kennemer, lay witness Ms. Cordill, and the erroneous credibility assessment of Mr. Shelton. Although defendant correctly states that the

OPINION AND ORDER – 22

Court is not required to credit improperly discredited evidence to the exclusion of all other valid

evidence, the court is satisfied that based on the record as a whole, there is no doubt that plaintiff

is disabled. Although the ALJ did not provide a complete analysis of the record, the record itself

is fully developed. The ALJ failed to provide legally sufficient reasons for discounting

Mr. Shelton's credibility, the testimony of his wife, and the opinions of five "acceptable"

medical sources. If the improperly discredited evidence were credited as true, a finding of

disability would be required on remand.

The Ninth Circuit has repeatedly stated, "allowing the Commissioner to decide the issue

again would create an unfair 'heads we win; tails, let's play again' system of disability benefits

adjudication." *Benecke*, 379 F.3d at 595; *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)

("The Commissioner, having lost this appeal, should not have another opportunity to show that

Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand

and further proceedings to establish his credibility.") (citation omitted). Mr. Shelton has

presented consistent evidence of significant longstanding cognitive and emotional impairments

in addition to physical impairments. On this record, the Court is satisfied that Mr. Shelton is

disabled under the Act; no useful purpose would be achieved by prolonging this matter in

additional proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

The Commissioner's decision that Mr. Shelton is not disabled is not based on proper legal standards or supported by substantial evidence; thus, Mr. Shelton's request for remand (Dkt. 1) is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for immediate calculation and payment of benefits.

DATED this 30th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

OPINION AND ORDER – 24